JOURNAL ENTRY and OPINION
Appellant Willie Gaffney appeals the trial court's grant of permanent custody of his minor child, Cathy McClardy, to the Cuyahoga County Department of Children and Family Services (CCDCFS). Gaffney contends the trial court erred in terminating his parental rights when CCDCFS did not provide him with adequate support in satisfying the case plan, and the trial court did not articulate a sufficient statutory basis in determining that his minor child could not be placed with him. Gaffney assigns the following errors for our review:
 I. THE TRIAL COURT'S JUDGMENT TERMINATING APPELLANT'S PARENTAL RIGHTS IS NOT PROPER WHERE THE CHILD HAS SPECIAL PSYCHOLOGICAL AND PSYCHIATRIC NEEDS AND THERE WAS NO ATTEMPT BY THE APPELLEE, CCDCFS, BY WAY OF CASE PLAN OR OTHERWISE TO PROVIDE THE APPELLANT THE FACILITIES TO ACQUIRE OR ATTEMPT TO ACQUIRE SUCH ABILITIES.
 II. THE TRIAL COURT'S JUDGMENT TERMINATING APPELLANT'S PARENTAL RIGHTS IS NOT PROPER WHERE THE JUDGMENT FAILS TO FIND IN ITS ENTIRETY ONE OF THE EIGHT FACTORS ENUMERATED IN SECTION 2151.41.4(E), OHIO REVISED CODE.
Having reviewed the available record and legal arguments of the parties, we affirm the trial court's decision. The apposite facts follow.
Catherine McClardy is the biological mother of four children, including Cathy McClardy (Cathy). Gaffney is Cathy's father. While this action was pending before the trial court, Catherine McClardy voluntarily relinquished her parental rights to her daughter; consequently, the only issue before this court is Gaffney's parental rights.
On March 12, 1998, the trial court granted temporary custody of Cathy to CCDCFS who placed the child with foster parents. On January 28, 1999, CCDCFS moved to modify the temporary custody to permanent custody. During the hearings on this motion, CCDCFS presented testimony from three witnesses: the foster mother, CCDCFS social worker Yolanda Lewis, and Andrea Ware, a family therapist at Beechbrook's Youth and Family Clinic. Gaffney testified on his own behalf.
The foster mother testified that Cathy lived with her from February 1998 until September 1999, at which point CCDCFS placed Cathy in Laurelwood Hospital. Cathy's hospitalization followed an episode in which Cathy claimed to hear voices and climbed through a window intending to commit suicide. The foster mother also testified that Cathy has displayed behavior problems such as throwing violent tantrums, starting a fire in the kitchen sink, playing with herself in a sexual manner, pressing dolls together as if they were having sex, and twisting and shaking her body between the legs of the foster mother's husband.
Ware testified she worked with Cathy until Cathy's placement at Laurelwood Hospital, and during that time, Cathy displayed very severe temper tantrums involving hitting, spitting, and biting. Ware also testified she knew of Cathy's sexually oriented conduct and that Cathy talked about hearing voices. When asked about Cathy's parental needs, Ware responded, she needs a person who's very stable, a person who's gonna be very consistent in life. She also needs a person who's loving and caring, that's gonna be there for her.
Lewis testified that from October 6, 1998 until June 15, 1999, Gaffney had three different residences and missed twenty out of twenty-nine scheduled visits with Cathy. Lewis testified that although Gaffney established paternity and completed a drug assessment program in accordance with his case plan, she would not recommend placing Cathy with Gaffney. Lewis stated, Cathy is in need of stability, and Mr. Gaffney has not displayed that throughout the time I've been working on the case. Further, Cathy has a lot of emotional problems when * * * her parents did not visit. I think with her hearing the voices, all of the things she has been through, it will be detrimental to put her with him, because of his instability.
Gaffney testified his work schedule forced him to miss the visits. Regardless, he never rescheduled visits, and the social worker eventually terminated visitation because of the distress the unfulfilled visits caused Cathy. Gaffney admitted he has been through treatment for cocaine and marijuana use, and he has a criminal record for trafficking marijuana and carrying a concealed weapon. Gaffney testified he currently lives with a woman who is a recovering alcoholic, and his brother who has a criminal record for murder.
Gaffney raises two assignments of error on appeal. To facilitate our review, we begin with Gaffney's second assignment of error. Gaffney's second assignment of error argues the trial court erred in determining Cathy could not be placed with Gaffney because the trial court failed to find at least one necessary statutory factor. We disagree.
R.C. 2151.414(E) requires a trial court to find at least one enumerated factor when determining the best interest of the child and whether a child cannot be placed with her parents. The following factors are relevant to this appeal:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child, when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. (Emphasis added.)
The trial court found [Gaffney] has failed continuously and repeatedly for a period of six (6) months or more to substantially remedy the conditions causing the children to be placed outside the home. This finding mirrors the language of R.C. 2151.414(E)(1). Further, the trial court found, [Gaffney] * * * lack[s] independent and stable housing. This finding closely parallels the language of R.C. 2151.414(E)(4). Either of these two findings gives the trial court sufficient basis to hold that Cathy cannot be placed with Gaffney.
In his brief to this court, Gaffney specifically refers us to the following statement in the trial court's journal entry:
 [Gaffney] has filed (sic) to regularly visit or communicate with [Cathy], omitting the clause when able to do so. Having previously held that the trial court complied with R.C. 2151.414(E) by finding that other factors exist, this argument is moot. Because we are not called upon to review the sufficiency of the court's findings, our review of Gaffney's second assignment of error ceases at this point. Accordingly, we overrule Gaffney's second assignment of error.
In his first assignment of error, Gaffney argues the trial court improperly terminated his parental rights because CCDCFS's case plan was deficient in that it did not help him develop the abilities necessary to meet Cathy's special needs. We disagree.
Once a court determines one of R.C. 2151.414(E)'s factors exist, the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time. In re Shanequa H. (1996), 109 Ohio App.3d 142; In re Higby (1992), 81 Ohio App.3d 466,611 N.E.2d 403. Additionally, the trial court must determine whether CCDCFS made reasonable efforts to do any of the following: (a) prevent the removal of the child from the child's home; (b) eliminate the continued removal of the child from the child's home; (c) make it possible for the child to return home. Juv.R. 27(B)(1).
Based upon substantial evidence, the trial court found, [Cathy] cannot be placed with the parents within a reasonable time or should not be placed with the parents * * *. Further, the trial court found, reasonable efforts were made by [CCDCFS] to prevent the removal of said children from their home or to make it possible for them to return. The record supports this finding. CCDCFS developed a case plan to reunite Gaffney with Cathy. CCDCFS placed Cathy with foster parents able to care for Cathy, giving Gaffney an opportunity to become a responsible parent. CCDCFS placed Cathy with Ware, a family therapist, to solve Cathy's temper tantrums, sexual behavior, and the voices Cathy hears so that Gaffney would be better able to handle Cathy. CCDCFS employed Lewis, a social worker, to schedule and monitor visits between Gaffney and Cathy so that Gaffney and Cathy could become better acquainted and Gaffney could learn the skills necessary to handle any of Cathy's special problems. For the foregoing reasons, we hold that the trial court did not err in finding that CCDCFS made reasonable efforts to make it possible for Cathy to return home with Gaffney. Accordingly, we overrule Gaffney's first assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ PATRICIA ANN BLACKMON, J.: